511 S.E.2d 413

**Grady YOUNG, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Respondent.**

No. 2938.

Court of Appeals of South Carolina.

Heard Jan. 12, 1999.

Decided Feb. 1, 1999.

Joseph C. Smithdeal, of Ayers, Smithdeal & Bettis, of Greenwood, for Appellant.

Matthew P. Utecht, of Haynsworth, Marion, McKay & Guerard, of Greenville, for Respondent.

ANDERSON, Judge:

Grady Young initiated this negligence action against the South Carolina Department of Corrections. He appeals from the trial court's order granting summary judgment to the Department of Corrections and finding Young's claim was barred by the statute of limitations. We affirm.

## *FACTS/PROCEDURAL BACKGROUND*

Grady Young is an inmate at Perry Correctional Institution (Perry), where he is serving a life sentence for murder. In January of 1993, Young began reporting vision problems to the medical staff at Perry. He complained of "floaters," which he described as "bugs," and blurred vision in his right eye. The medical staff examined and treated Young on several occasions, but did not refer him to an ophthalmologist until May of 1993.

Young recalled no further visual deterioration between January and May 4, 1993, when Dr. Julius Welborn, a private ophthalmologist, diagnosed Young with a detached retina in the right eye. Dr. Welborn made an appointment for Young to see Dr. Nick McLane the next day, which was May 5, 1993. Dr. McLane confirmed Dr. Welborn's diagnosis of total retinal detachment in the right eye. Young testified Dr. McLane informed him: " 'You've got a retina and there's a lot of scar tissue built up in there.' " Referring to the medical staff at Perry, Dr. McLane told Young " '[t]hey waited too long.' "

Dr. McLane scheduled Young for retinal repair surgery, which was performed by Dr. Jeffrey Gross on May 11, 1993. Before the surgery, Dr. Gross asked Young why he had waited so long to seek help. Young responded: " 'It's up to Perry.' "

Dr. Gross explained to Young that "a lot of scar tissue had built up" and he was "'going to try to help'" him. When asked Dr. Gross's prognosis for recovery, Young declared Dr. Gross stated "that after everything was over with, he was hoping [Young] could see."

Dr. Gross warned Young that cataracts would quickly form in his eye after surgery and would have to be removed. As predicted, a cataract formed. Dr. Welborn removed it on July 12, 1994. After the cataract surgery, Young's vision did not improve. According to Young, this was the first time he realized his sight would not "get better due to the delay."

Young filed this negligence action on July 2, 1996. In its answer, the Department of Corrections averred Young's claim was barred by the applicable statute of limitations. The Department of Corrections moved for summary judgment, which the trial court granted.

## ISSUES

I.  Did the trial court err in finding Young failed to exercise reasonable diligence in discovering the injury to his eye?

II.  Did the trial court err in granting summary judgment to the Department of Corrections?

## STANDARD OF REVIEW

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Etheredge v. Richland Sch. Dist. 1*, 330 S.C. 447, 499 S.E.2d 238 (Ct.App.1998); Rule 56(c), SCRCP. *See also Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990) (motion for summary judgment shall be granted if pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and moving party is entitled to judgment as matter of law). In determining whether any triable issue of fact exists, as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light

most favorable to the nonmoving party. *Etheredge, supra;*
*Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997). If
triable issues exist, those issues must go to the jury. *Roth-rock v. Copeland,* 305 S.C. 402, 409 S.E.2d 366 (1991).

Summary judgment is not appropriate where further inqui-
ry into the facts of the case is desirable to clarify the applica-
tion of the law. *Tupper v. Dorchester County,* 326 S.C. 318,
487 S.E.2d 187 (1997). All ambiguities, conclusions, and infer-
ences arising from the evidence must be construed most
strongly against the movant. *Staubes v. City of Folly Beach,*
331 S.C. 192, 500 S.E.2d 160 (Ct.App.1998). Even when there
is no dispute as to evidentiary facts, but only as to the
conclusions or inferences to be drawn from them, summary
judgment should be denied. *Id.* However, when plain, palpa-
ble, and indisputable facts exist on which reasonable minds
cannot differ, summary judgment should be granted. *Id.;*
*Pye, supra.*

## *LAW/ANALYSIS*

### I. Statute of Limitations—Discovery Rule

■ Young argues the trial judge erred in finding he failed
to exercise reasonable diligence in discovering the injury to his
eye. We disagree.

The South Carolina Department of Corrections is a "govern-
mental entity" as defined by S.C.Code Ann. § 15–78–30(d)
(Supp.1998). The Tort Claims Act, which governs tort claims
against governmental entities, contains a two year statute of
limitations which is applicable in the case *sub judice. See*
S.C.Code Ann. § 15–78–100(a) (Supp.1998); S.C.Code Ann.
§ 15–78–110 (Supp.1998).

■ Pursuant to § 15–78–110, "any action brought pursu-
ant to this chapter is forever barred unless an action is
commenced within two years after the date the loss was or
should have been discovered." The discovery rule is applica-
ble to actions brought under the Tort Claims Act. *Barr v. City
of Rock Hill,* 330 S.C. 640, 500 S.E.2d 157 (Ct.App.1998). In
*Dean v. Ruscon Corp.,* 321 S.C. 360, 468 S.E.2d 645 (1996), the
Supreme Court explicated:

According to the discovery rule, the statute of limitations begins to run when a cause of action reasonably ought to have been discovered. The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct. We have interpreted the "exercise of reasonable diligence" to mean that the injured party must act with some promptness where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on *notice* that a claim against another party might exist. Moreover, the fact that the injured party may not comprehend the full extent of the damage is immaterial.

*Dean,* 321 S.C. at 364, 468 S.E.2d at 647 (citations omitted) (emphasis in original). *See also Wiggins v. Edwards,* 314 S.C. 126, 442 S.E.2d 169 (1994) (exercise of reasonable diligence means simply that injured party must act with some promptness where facts and circumstances of injury would put person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist; statute of limitations begins to run from this point and not when advice of counsel is sought or full-blown theory of recovery is developed); *Burgess v. American Cancer Soc'y,* 300 S.C. 182, 386 S.E.2d 798 (Ct.App.1989) (statute starts to run upon discovery of such facts as would have led to knowledge thereof if pursued with reasonable diligence).

The date on which discovery should have been made is an objective, not subjective, question. *Kreutner v. David,* 320 S.C. 283, 465 S.E.2d 88 (1995); *Wiggins, supra.* In other words, whether the particular plaintiff actually knew he had a claim is not the test. Rather, courts must decide whether the circumstances of the case would put a person of common knowledge and experience on notice that some right of his has been invaded, or that some claim against another party might exist.

Viewing the facts and inferences in the light most favorable to Young, we rule he was put on notice in May of 1993 that he had a claim against the Department of Corrections for the delay in diagnosis, treatment, or referral to a specialist. Two doctors, Dr. McLane and Dr. Gross, commented on the delay

in medical treatment. On May 11, 1993, the date of his retinal repair surgery, Young was aware he had suffered a delay in treatment, that the delay concerned doctors, and that he had scar tissue built up in his eye. Thus, the statute of limitations on his claim began to run on May 11, 1993.

■ Although Young could not determine the extent of his loss until after the July 1994 cataract surgery, the law is clear the statute of limitations is not tolled during the period of time in which a plaintiff is merely unaware of the extent of an actionable injury. *See Christensen v. Mikell,* 324 S.C. 70, 476 S.E.2d 692 (1996); *Dean v. Ruscon Corp.,* 321 S.C. 360, 468 S.E.2d 645 (1996). The fact that Young's vision did not deteriorate between January of 1993, when he first complained to medical personnel at Perry and May of 1993, when he was diagnosed and treated, does not present a genuine issue of material fact as to when the statute of limitations began to run. Young was not required to understand fully the ramifications of the scar tissue buildup or delay in diagnosis and treatment to be put on notice the delay had resulted in an injury.

■ Young avers he suffered two distinct injuries: (1) scar tissue buildup in his right eye and (2) permanent loss of vision in his right eye. We reject Young's position because the evidentiary record does not support the occurrence of two distinct injuries. Factually and legally, only one injury was sustained by Young.

We hold the concernment expressed by the doctors, in conjunction with the other evidence in this case, was sufficient to place a reasonable person of common knowledge and experience on notice that a claim against the Department of Corrections might exist. Acting with reasonable diligence, Young could or should have known a cause of action might exist as of May 11, 1993. Young had until May 11, 1995, to file this action. Instead, Young did not bring this action until June 2, 1996. Because he did not file this action within two years from the time he discovered or reasonably should have discovered the injury, Young's claim is barred by the statute of limitations.

## II. Application of Rule 56, SCRCP

█ Young maintains the trial judge erred in granting summary judgment to the Department of Corrections. Young contends the judge erred as a matter of law in ruling the statute of limitations began to run on May 10, 1993.[1] Specifically, he claims:

> The trial judge construed the evidence in a light most favorable to the moving party by assuming that appellant made the connection between the scar tissue build up and the failure of the retina surgery prior to the cataracts being removed. In fact, the trial judge, by ruling that the statute of limitations had begun to run on May 10, 1993, held implicitly that the appellant should have known that the scar tissue caused by the delay in treatment was *going* to cause the retina surgery to fail even before the surgery was performed. In so ruling, the trial judge erred in granting summary judgment against appellant.

We find the trial judge did not place an undue prophetic burden upon Young. Young was not required to know the sight in his right eye was *permanently* lost to be put on notice the Department of Corrections had caused him injury through the delay in diagnosis and treatment. When he was told of the scar tissue by two separate doctors, who both displayed concern over the delay in diagnosis and treatment, Young discovered or should have discovered potential damage to his sight. The statute of limitations on his cause of action against the Department of Corrections began to run at this time. Viewing the facts in the light most favorable to Young, the Department of Corrections was entitled to summary judgment. No genuine issue of material fact exists as to whether the two year statute of limitations precludes this action.

## CONCLUSION

We conclude the statute of limitations began to run on Young's claim on May 11, 1993. Young did not file this action

---

1. The order of Judge Patterson states: "On May 10, 1993, Dr. Gross performed surgery on the Plaintiff to repair the retina." However, the official record emanating from Richland Memorial Hospital dates the surgical activity in the operative note with specificity: "DATE OF OPERATION: 05/11/93."

within two years from the time he discovered or reasonably should have discovered the injury. As a result, his claim was barred by the statute of limitations. Concomitantly, the trial court did not err in granting summary judgment to the Department of Corrections. Accordingly, the order of the trial court is

**AFFIRMED.**

HOWELL, C.J., and STILWELL, J., concur.